UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROXANNE C.,[1] <br> *Plaintiff*, <br><br> v. <br><br> KILOLO KIJAKAZI, COMMISSIONER <br> OF SOCIAL SECURITY,[2] <br> *Defendant*. | 3:21-CV-172 (SVN) <br><br><br><br><br> September 16, 2022 |

**DECISION AND ORDER ON PLAINTIFF'S MOTION TO REVERSE AND DEFENDANT'S MOTION TO AFFIRM**

Sarala V. Nagala, United States District Judge.

Plaintiff Roxanne C. brought this suit pursuant to 42 U.S.C. § 405(g), to appeal the decision of the Commissioner of the Social Security Administration (the "Commissioner" or "Defendant") denying her claim for Supplemental Security Income benefits ("SSI") and Social Security Disability Insurance ("SSDI") under Titles II and XVI of the Social Security Act. Plaintiff filed a motion for an order reversing the decision of the Commissioner or, in the alternative, for remand for another hearing. ECF No. 17. Defendant cross-moved for an order affirming the Commissioner's decision. ECF No. 18. For the reasons outlined below, the Court DENIES Plaintiff's motion and GRANTS Defendant's motion.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff is a fifty-two-year-old woman who, relevant to this action, suffers from bipolar disorder, schizoaffective disorder, and breast cancer post-mastectomy. *See generally* ECF No. 18-

---

[1] In opinions issued in cases filed pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in order to protect the privacy interests of social security litigants while maintaining public access to judicial records, this Court will identify and reference any non-government party solely by first name and last initial. *See* Standing Order – Social Security Cases (D. Conn. Jan. 8, 2021).

[2] At the time Plaintiff commenced this action, Andrew Saul was the Commissioner of the Social Security Administration. On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and thus replaces Saul as the defendant in this action. *See* Fed. R. Civ. P. 25(d).

2, Stipulated Fact Statement.

The following stipulated facts are relevant to the diagnosis and treatment of Plaintiff's mental health conditions. Following an emergency department visit on May 20, 2018, where Plaintiff complained of chest pain, nausea, vomiting, and abdominal pain, *id.* ¶ 6, Plaintiff was psychiatrically hospitalized between May 24 and 29, 2018, *id.* ¶ 7. At the time of the hospitalization, Plaintiff had not taken her previously prescribed behavioral health medications for six months, and was experiencing hallucinations and hearing voices. *Id.* Upon her discharge, Plaintiff was diagnosed with bipolar disorder. *Id.* On June 5, 2018, Plaintiff underwent a psychiatric evaluation and was diagnosed with schizoaffective disorder. *Id.* ¶ 9. Between June of 2018, and April of 2019, Plaintiff attended regular medication management appointments and reported that her symptoms had improved and were well-controlled, despite that she had discontinued use of lithium around November of 2018. *Id.* ¶¶ 10–15, 20, 24, 26–27, 29–30. In late October of 2018, Plaintiff called Greenwich Hospital reporting distress, *id.* ¶ 36; the parties' stipulated facts do not make further mention of this incident. Plaintiff engaged in individual psychotherapy appointments in October, November, and December of 2019. *Id.* ¶¶ 35, 40–41. In the November and December 2019, appointments, she reported an increase in her symptoms of depression. *Id.* ¶¶ 40–41.

Related to Plaintiff's breast cancer, in April and May of 2018, Plaintiff visited doctors concerning breast calcifications and invasive carcinoma. *Id.* ¶¶ 3–5. Plaintiff underwent a right mastectomy on December 10, 2018. *Id.* ¶ 22. She experienced some axillary discomfort a few weeks after the surgery, *id.* ¶ 23, but follow-up appointments otherwise went well, *id.* ¶¶ 25, 32. The parties have stipulated that Plaintiff was scheduled for right breast surgery on May 24, 2019, but have not stated whether such surgery occurred, *id.* ¶ 33. No further facts related to Plaintiff's

breast cancer after the scheduled May 24, 2019, appointment are presented in the parties' stipulated facts.

Plaintiff also alleges orthopedic issues and pain. In February of 2018, Plaintiff slipped on ice and experienced pain, resulting in her requesting a consultation with an orthopedist. *Id.* ¶¶ 1– 2. Separately, in September of 2019, Plaintiff was assessed with syncope and back pain, though she had not experienced any further syncope symptoms since the episode in September of 2019. *Id.* ¶¶ 34–35. In October of 2019, Plaintiff was involved in a car accident, which resulted in neck and shoulder pain. *Id.* ¶ 16.

Between October 10 and 25, 2018, Richard Dunn, LPC and Dr. Charles Alexander completed a medical source statement for Plaintiff, which noted that her psychiatric symptoms were well-managed with medication, though with some side effects; that she sometimes had problems with taking care of personal hygiene, using appropriate coping skills, handling frustration appropriately, asking questions or requesting assistance, getting along with others without it distracting them, and carrying out single-step instructions; and that she had frequent problems with carrying out multi-step instructions, focusing long enough to finish simple activities or tasks, changing from one simple task to another, and performing basic activities at a reasonable pace. *Id.* ¶ 17. The clinicians noted that Plaintiff had average to excellent abilities in the following areas: caring for physical needs, using good judgment regarding safety and dangerous circumstances, interacting appropriately with others, respecting/responding appropriately to others in authority, and persisting in simple activities without interruption from psychological symptoms. *Id.* The same providers completed another medical source statement on January 6, 2020. *Id.* ¶ 42. In the 2020, statement, they opined that Plaintiff had marked limitation in the ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary

tolerances; in the ability to complete a normal workday and workweek, without interruptions from psychologically-based symptoms; and in the ability to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* The clinicians further opined that Plaintiff had moderate limitations in the ability to understand, remember, and carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to sustain an ordinary routine without special supervision; the ability to travel in unfamiliar places or use public transportation; and the ability to tolerate normal levels of stress. *Id.* The clinicians noted several other mild limitations as well. *Id.* They concluded that Plaintiff's "ability to manage stress, psychotic and mood issues, and poor recent work history would create difficulties . . . working a full work week." *Id.*

On October 14, 2018, the state agency reviewer found that Plaintiff suffered some mild to moderate limitations, but that the medical evidence was insufficient to find that Plaintiff suffered from severe medically determinable physical impairments. *Id.* ¶ 19. A second state agency reviewer later concurred about Plaintiff's mental limitations, *id.* ¶ 21, and a third later agreed that Plaintiff did not have severe medically determinable physical impairments, *id.* ¶ 28.

On June 20, 2018, Plaintiff filed her applications for SSDI and SSI, alleging an initial onset date of disability of June 1, 2012. ECF No. 13, Tr. at 10 (Decision of Administrative Law Judge (hereafter "ALJ Decision")). This initial onset date was later amended to May 29, 2018. *Id.* Plaintiff's claims were denied initially and denied again upon reconsideration. *Id.* Plaintiff then requested a hearing on her application, which was held before Administrative Law Judge Eskunder Boyd (the "ALJ") on January 17, 2020. *Id.* At the hearing, Plaintiff testified that she primarily stays at home, that she believes her TV talks back to her, and that she was told she could not lift more than ten pounds after her breast cancer surgery. Tr. at 267–70.

On February 10, 2020, the ALJ issued a decision unfavorable to Plaintiff.  ALJ Decision, Tr. at 10–22.  Plaintiff subsequently filed the instant action on February 10, 2021.  ECF No. 1.

## II.     LEGAL STANDARD

SSI is "designed to assist aged, disabled and blind persons by setting a minimum guaranteed income for such persons." *New York v. Sebelius*, No. 1:07-CV-1003 (GLS/DRH), 2009 WL 1834599, at *1 (N.D.N.Y. June 22, 2009); *see also* 42 U.S.C. § 1381.  SSDI is a "federally funded cash benefit paid to persons 'under a disability' who have 'insured status' at the time of the disability's onset." *Sebelius*, 2009 WL 1834599, at *1; *see also* 42 U.S.C. §§ 423(a), (c); 20 C.F.R. § 404.131.  Qualification for SSDI does not turn on a showing of financial need. *Sebelius*, 2009 WL 1834599, at *1.

A person is "disabled" and entitled to SSI and SSDI if that person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a).  A physical or mental impairment is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).  In addition, a claimant must establish that her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

For Plaintiff to obtain SSDI, she "must demonstrate that she was disabled on the date she was last insured for benefits." *Swainbank v. Astrue*, 356 F. App'x 545, 547 (2d Cir. 2009) (summary order).  In the present case, Plaintiff's date last insured was September 30, 2018.  ALJ

Decision, Tr. at 11.  Thus, Plaintiff must establish disability on or before that date in order to be entitled to SSDI benefits.

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether a claimant's condition meets the Social Security Act's definition of disability.  *See* 20 C.F.R. § 404.1520.  The five steps are best summarized as: "(1) the Commissioner determines whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner determines whether the claimant has 'a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509' or a combination of impairments that is severe and meets the duration requirements; (3) if such a severe impairment is identified, the Commissioner next determines whether the medical evidence establishes that the claimant's impairment 'meets or equals' an impairment listed in Appendix 1 of the regulations; (4) if the claimant does not establish the 'meets or equals' requirement, the Commissioner must then determine the claimant's residual functional capacity ('RFC') to perform [her] past relevant work; and (5) if the claimant is unable to perform [her] past work, the Commissioner must next determine whether there is other work in the national economy which the claimant can perform in light of [her] RFC and [her] education, age, and work experience."  *Meade v. Kijakazi*, No. 3:20-CV-00868 (KAD), 2021 WL 4810604, at *1 (D. Conn. Oct. 15, 2021); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 404.1509.  The claimant bears the burden of proof with respect to steps one through four, while the Commissioner bears the burden of proof for step five.  *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

It is well-settled that a district court will reverse the decision of the Commissioner as to whether a claimant is disabled only when it is based upon legal error or when it is not supported by substantial evidence in the record.  *See, e.g.*, *Greek v. Colvin*, 802 F.3d 370, 374–75 (2d Cir.

6

2015) (per curiam); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks and citation omitted).

"In determining whether the agency's findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (quotation marks and citation omitted). Under this standard of review, "absent an error of law, a court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the court might have ruled differently." *Campbell v. Astrue*, 596 F. Supp. 2d 446, 448 (D. Conn. 2009). The court must therefore "defer to the Commissioner's resolution of conflicting evidence," *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012), and reject the Commissioner's findings of fact only "if a reasonable factfinder would *have to conclude otherwise*," *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal citation omitted) (emphasis in original). Stated simply, "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian*, 708 F.3d at 417.

### III. THE ALJ's DECISION

As relevant here, the ALJ found that Plaintiff met the insured status requirements to be eligible for SSDI; that she has not engaged in substantial gainful activity since her amended alleged onset date of disability (May 29, 2018); that she has the severe impairments of breast cancer, status post-right mastectomy, bipolar disorder, and schizoaffective disorder; and that she does not have

an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the relevant regulations. ALJ Decision, Tr. at 13–15.

The ALJ also found that Plaintiff has the residual functional capacity ("RFC") to perform light work, except that she may never climb ladders, ropes, or scaffolds and may never kneel/crawl; she may occasionally climb stairs/ramps, balance, stoop, and crouch; she cannot work in cold; she can perform simple, routine, repetitive tasks and sustain concentration, persistence, and pace for two-hour segments; and she needs occasional, but non-collaborative interaction with coworkers and brief and superficial interaction with the public. *Id.*, Tr. at 16. She also needs work with little to no change in duties or routines and work that does not require independent judgment-making, such as setting duties or schedules for others or responsibility for the safety of others. *Id.*

In making these findings, the ALJ considered Plaintiff's hearing testimony and the medical records. The ALJ rejected Plaintiff's asserted limitation of being unable to lift more than ten pounds as inconsistent with the medical evidence. *Id.*, Tr. at 17. He found that Plaintiff has "limitations from her mental impairment," but that her mental health conditions were well-controlled with medication, did not result in problems with attention span or memory, and did not support a conclusion that Plaintiff "could not perform at least short and simple tasks." *Id.*, Tr. at 17–18.

## IV.  DISCUSSION

In her motion, Plaintiff asserts that the ALJ erred by leaving an "obvious" gap in the medical evidence of record and omitting relevant factors from his RFC description. ECF No. 17-1 at 7, 12. Defendant, on the other hand, contends that the record was sufficiently developed to support the ALJ's decision, and that substantial evidence supports the RFC finding. The Court agrees with Defendant.

### A. No Further Development of the Record Was Necessary

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996); *Rodriguez ex rel. Silverio v. Barnhart*, No. 02-CV-5782 (FB), 2003 WL 22709204, at *3 (E.D.N.Y. Nov. 7, 2003) ("The responsibility of an ALJ to fully develop the record is a bedrock principle of Social Security law."). The ALJ's duty to develop the record "includes assembling the claimant's complete medical history and recontacting the claimant's treating physician if the information received from the treating physician or other medical source is inadequate to determine whether the claimant is disabled." *Rodriguez ex rel. Silverio*, 2003 WL 22709204, at *3. This duty exists even where the claimant is represented by counsel or a paralegal. *See Perez*, 77 F.3d at 47.

Plaintiff first argues that the ALJ did not properly develop the record as to Plaintiff's orthopedic and pain issues. The Court disagrees. While Plaintiff requested a referral for orthopedic care on February 28, 2018, and had been prescribed certain medicine for pain, it is clear that the focus of Plaintiff's application for disability was primarily her mental health and breast cancer medical issues, not any orthopedic issues. *See* Tr. at 481 (listing medical conditions that limit ability to work as "Breast Cancer Stage 1," "Carpal Tunnel Syndrome,"[3] and "Bipolar 1"); Tr. at 261 (hearing transcript noting that mental health limitations were the primary reason for the application, along with physical issues caused by Plaintiff's breast cancer). Moreover, the stray remarks concerning back pain and orthopedic issues in Plaintiff's medical records did not necessitate further development of the record on this issue, given the medical evidence as a whole. *See Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 32 (2d Cir. 2013) (summary order)

---

[3] Defendant asserts that carpal tunnel syndrome is not typically considered an orthopedic issue. In any event, Plaintiff does not focus in this appeal on carpal tunnel syndrome as an issue requiring further development of the record.

9

(recognizing that an ALJ was not required to supplement the record in response to "a few stray remarks unsupported by other record evidence").

The Court also rejects Plaintiff's contention that reversal or remand is required because treatment notes from Richard Dunn, LPC, with whom Plaintiff had been engaging in counseling sessions, were missing from the record. Initially, the Court notes that it is generally Plaintiff's burden to prove that she is disabled, which includes informing the agency about her disability and submitting to the agency all evidence known to her concerning whether or not she is disabled. 20 C.F.R. § 404.1512(a)(1). It is the agency's responsibility, however, to develop the claimant's medical history, and the agency must make "every reasonable effort to help [the claimant] get medical evidence from [her] medical sources and entities that maintain [the claimant's] medical sources' evidence" when the claimant authorizes record retrieval. *Id.* § 404.1512(b)(1); *see also id.* § 416.912(b)(1). "Every reasonable effort" means that the agency will make an initial request for evidence from the medical provider and one follow-up request between ten and twenty days after the initial request if the provider did not respond to the initial request. *Id.* §§ 404.1512(b)(1)(i), 416.912(b)(1)(i). It is clear that the ALJ "does not need to attempt to obtain every extant record of the claimant's doctor visits when the information on the record is otherwise sufficient to make a determination," and need not request more detailed information if a report is a sufficient basis on which to conclude that the claimant is not disabled. *Harvey v. Astrue*, No. 5:05-CV-1094 (NAM), 2008 WL 4517809, at *8 (N.D.N.Y. Sept. 29, 2008) (considering issue of supplementation of the record in the context of a treating physician's records).

In this case, the agency made four requests of Southwest Community Health Center, where Mr. Dunn practiced, for Plaintiff's records. Tr. at 612, 809–10, 833–34, 33. Although it is not clear from the record whether the second attempt was made within ten to twenty days of the initial

request, making four unanswered requests certainly constitutes making "every reasonable effort" as required by the regulations. *See Franklin v. Comm'r of Soc. Sec.*, No. 17-CV-6894-JWF, 2019 WL 1230082, at *2 (W.D.N.Y. Mar. 15, 2019) (multiple record requests met the requirements of the regulations to adequately develop the record). Thus, because the agency satisfied its obligation to develop Plaintiff's medical history with respect to the treatment notes from her visits with Mr. Dunn, the absence of these notes from the record does not present grounds for reversal or remand.

Finally, Plaintiff claims that the ALJ inappropriately determined that the state agency reviewer's opinion was "partially persuasive," even though the state agency reviewer did not consider any exertional limitations due to Plaintiff's breast cancer. She argues that the ALJ should not have relied on this opinion at all, particularly in light of the "missing" medical evidence. The Court disagrees. The ALJ appropriately discounted the reviewer's opinion, rather than giving it full persuasive effect, because of its failure to consider exertional limitations. ALJ Decision, Tr. at 19. Plaintiff also argues that the ALJ failed to articulate the precise amount of weight given to an opinion of a treating physician (presumably Mr. Dunn's opinion, though Plaintiff is not specific). ECF No. 17-1 at 9. In making this argument, however, Plaintiff has cited outdated case law applying an old regulatory scheme that is no longer applicable; the applicable regulations no longer require the ALJ to give opinions of treating physicians any specific evidentiary weight, including controlling weight. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

### B. The ALJ's RFC Finding Was Supported By Substantial Evidence

Plaintiff's arguments that the ALJ's RFC finding was erroneous fare no better. First, related to her contention that the record was underdeveloped, Plaintiff argues that the exertional limitations in the RFC were not supported by a medical opinion. Aside from her own hearing testimony, Plaintiff does not point to any evidence suggesting that she is more limited than the ALJ found but, instead, simply claims that the exertional RFC is unsupported because neither the state agency opinion nor any other medical opinion considered Plaintiff's exertional limitations due to breast cancer. But it is the ALJ, not a medical source, who is "responsible for assessing" a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c), and the ALJ must formulate a claimant's RFC based "on all of the relevant medical and other evidence," 20 C.F.R. § 404.1545(a)(3).

Here, it is clear the ALJ reviewed the medical and other evidence concerning Plaintiff's breast cancer diagnosis and treatment, which demonstrated that her physical examinations were largely normal following some initial axillary discomfort. Plaintiff's statement that she should not lift more than ten pounds is not borne out in the medical records. Nor is there any indication in her function report, which has an unchecked box where Plaintiff could have indicated that her illnesses, injuries, or conditions affect her "lifting," that she is not capable of the light work set forth in the RFC. Tr. at 510. Indeed, in formulating the RFC, the ALJ specifically rejected the idea that Plaintiff was capable of performing her past relevant work as a home health aide, which she performed at the medium to heavy exertional level. ALJ Decision, Tr. at 19–20.

Contrary to Plaintiff's argument, the ALJ also properly accounted for Plaintiff's mental limitations in assessing her RFC. The ALJ appropriately considered the medical evidence concerning Plaintiff's hallucinations, and his conclusion that they were not more limiting than what was addressed in the RFC is supported by substantial evidence in the record. *See* Tr. at 577

(July 2018 visit note stating that auditory hallucinations started in 2013, but are "mild" and occur "randomly," and are "well controlled"), 585 (August 2018 visit note stating that Plaintiff denied auditory or visual hallucinations), 862 (June 2018 visit note stating that although Plaintiff had a history of auditory and visual hallucinations, no symptoms of this were present at the time, and that Plaintiff's intellect, cognition, insight, and judgment were within normal limits), 1139 (October 2019 visit note in which Plaintiff denied hallucinations).

Additionally, the ALJ's assessments of the January 2020 and October 2018 medical opinions of Dr. Alexander and Mr. Dunn are supported by substantial evidence. There does not appear to be a basis in the medical records for their conclusions that Plaintiff has a marked limitation in her ability to maintain a regular schedule or that she would frequently be absent, particularly given that Plaintiff's mental health symptoms improved with treatment and were largely controlled. That the ALJ found Plaintiff was no longer able to perform her past relevant work, and concluded instead that she is currently capable of only simple work in short segments, demonstrates that the ALJ did in fact include Plaintiff's mental health limitations, including off-task behaviors and absenteeism, in the RFC. In sum, the ALJ's finding regarding Plaintiff's RFC appropriately considered and accounted for the various mental limitations Plaintiff's records demonstrated.

## V.     CONCLUSION

For the reasons described herein, Plaintiff's Motion for an Order Reversing the Decision of the Commissioner (ECF No. 17) is hereby DENIED. Defendant's Motion for an Order Affirming the Commissioner's Decision (ECF No. 18) is hereby GRANTED. The Clerk of Court

is directed to enter judgment in favor of the Commissioner and close the case.

**SO ORDERED** at Hartford, Connecticut, this 16th day of September, 2022.

                                                      */s/ Sarala V. Nagala*
                                                      SARALA V. NAGALA
                                                      UNITED STATES DISTRICT JUDGE